IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

FILED
U.S. DISTRICT COURT
STATESBORO DIV.

2008 FEB 28 A 11: 46

R.Que.

SO. DIST. OF GA.

ERNEST HOWARD, SR.,           :

    Plaintiff,              :
                     :

    v.                      :            CIVIL ACTION NO.: CV606-062
                     :

HUGH SMITH, *et al.*,          :
                     :

    Defendants.             :

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate currently incarcerated at Georgia State Prison in Reidsville, Georgia ("GSP"), filed an action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement. Specifically, Plaintiff's Complaint alleged that GSP officials have denied him a nutritionally adequate diet, and that he has been housed in unsanitary and inhumane conditions. Plaintiff also alleged that GSP officials denied him certain prescribed medications for his chronic illnesses, and that Dr. Tommy Jones failed to provide him with adequate medical care.[1] On February 12, 2007, this Court

---

[1] Plaintiff's numerous factual allegations have been previously summarized by this Court:

    Plaintiff named forty-six (46) individuals as defendants in his Complaint, and appears to assert three distinct claims for relief. First, Plaintiff avers that he has been denied a nutritionally adequate diet while incarcerated at GSP. Plaintiff contends that officials at GSP denied him meals beginning in 2001 and continuing through 2005. (Doc. No. 17, pp. 3, 9). Plaintiff alleges that beginning in 2004, prison officials began serving him "only sandwiches," including "cold cuts" and "lacking vegetables." (Id. at 9). Plaintiff further alleges that he has been served unsanitary meals that contain insects and a rubber glove on one occasion, and are "frequently cold, or mixed-up like slop." (Id. at 10). Plaintiff asserts that this alleged denial of a nutritionally adequate diet has caused him to suffer severe weight loss and has exacerbated his existing medical conditions. (Id. at 11).

    Next, Plaintiff contends that he is being housed in unsanitary and inhumane conditions. Plaintiff alleges that officials at GSP refuse to flush the toilet in his cell, and that as a result he has suffered respiratory and digestive problems. (Doc. No. 17, p. 13).

entered partial summary judgment in favor of Defendants, dismissing Plaintiff's claim regarding the provision of prescription drugs. (Doc. No. 156). Thus, it is Plaintiff's claims as to his diet and the conditions of his housing, and his medical care claim against Dr. Jones, that remain pending. Defendants have now filed a second Motion for Summary Judgment, and Plaintiff has filed two additional Motions for Summary Judgment. For the reasons which follow, Defendants' motion should be **DENIED** in part and **GRANTED** in part, and Plaintiff's motions should be **DENIED**.

Defendants move for summary judgment on several grounds, contending that: (1) certain of Plaintiff's claims are barred by the statute of limitations; (2) certain of Plaintiff's claims are barred by the Prison Litigation Reform Act's (PLRA) exhaustion requirement; (3) Plaintiff's Eighth Amendment claims fail on their merits; (4) Plaintiff fails to demonstrate a causal connection between their actions and his injuries; (5) Plaintiff has no actual injury; (6) certain of Plaintiff's claims are improperly based upon a respondeat superior theory; and (7) they are entitled to qualified immunity.

Plaintiff's responses and cross motions for summary judgment allege, *inter alia*, that: (1) his submitted evidence refutes Defendants' claims as to the merits of his Eighth Amendment claims; (2) he exhausted what administrative remedies were available to him at GSP; and (3) there is a causal connection between Defendants' actions and his injuries.[2]

---

Finally, Plaintiff asserts that officials at GSP have failed to provide him with appropriate medical care for his serious chronic illnesses. (Id. at 14). Plaintiff alleges that officials have refused to provide him with certain prescribed medications and that, as a result, his conditions have worsened.
(Doc. No. 137, pp. 2-3).

[2] Plaintiff also argues that Defendants should not be able to rely upon certain materials to which he was allegedly denied access in discovery. Plaintiff's arguments on this point appear to merely rehash those previously made in motions to compel discovery, which have all been denied by this Court. See Doc. No.

## STANDARD OF DETERMINATION

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part[ies are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004). An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could cause a rational trier of fact to find in favor of the nonmoving party. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 1260 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

The moving parties bear the burden of establishing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish that there are no genuine issues of material fact. Hickson, 357 F.3d at 1260 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). When the nonmoving party would have the burden of proof at trial, the moving parties may

178 (denying Plaintiff's motion but ordering that Defendants permit him to view certain documents prior to purchase); Doc. No. 217 (denying Plaintiff's motion relating to same documents). Plaintiff also objects to Defendants' use of certain affidavits, because this information was not disclosed to him under Rule 26. Pursuant to former Rule 26(a)(1)(E)(iv) of the Federal Rules of Civil Procedure, a proceeding such as this "brought without counsel by a person in custody of . . . a state" is exempt from the initial disclosure requirements of Rule 26. Finally, Plaintiff's contention that Defendants are in violation of Local Rule 7.1(a) is moot, as the Court granted Defendants' Motion to Exceed Page Limitation on June 14, 2007. See Doc. No. 194.

discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. Id. In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Acevado v. First Nat'l Bank, 357 F. 3d 1244, 1247 (11th Cir. 2004).

## DISCUSSION AND CITATION OF AUTHORITY

### I.    Statute of Limitations

Plaintiff filed this cause of action pursuant to 42 U.S.C.A. § 1983. Although 42 U.S.C.A. § 1983 does not provide a specific statute of limitations, courts are to apply the most appropriate and analogous state statute of limitations in these type of civil rights actions. Burnett v. Grattan, 468 U.S. 42, 49, 104 S. Ct. 2924, 2929, 82 L. Ed. 2d 36 (1984); Hardin v. Straub, 490 U.S. 536, 538, 109 S. Ct. 1998, 2000, 104 L. Ed. 2d 582 (1989). The appropriate statute of limitations for this action, as determined by state law, is two years. O.C.G.A. § 9-3-33.

Defendants assert that all of Plaintiff's claims occurring prior to March 1, 2003 are barred by the statute of limitations. This is so, according to Defendants, because Plaintiff filed this action on March 1, 2005, alleging liability based on events dating back to 2001. Though it does not appear that Plaintiff actually claims any damages occurring prior to March 1, 2003, to the extent that he does, his claims are clearly in the nature of "continuing wrongs." Neel v. Rehberg, 577 F.2d 262, 264 (5th Cir. 1978) (refusal to provide medical treatment, shower, telephone, and visiting privileges to prisoner

constitutes continuing wrong).[3]  Where a continuing wrong is involved, "the cause of action accrues, and the limitation period begins to run, at the time the tortious conduct ceases."  Donaldson v. O'Connor, 493 F.2d 507, 529 (5th Cir. 1974).  Plaintiff's allegations, therefore, which pertain to his alleged mistreatment while at GSP and which allegedly continue through at least the filing of this action, are not time-barred or limited by the statute of limitations.

## II.    Exhaustion of Administrative Remedies

Defendants allege that Plaintiff did not exhaust his available administrative remedies, and that therefore they are entitled to summary judgment as to certain of his claims.  Section 1997e(a) of the PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  In Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002), the United States Supreme Court held that exhaustion of available administrative remedies is mandatory.  Porter, 534 U.S. at 524, 122 S. Ct. at 988.  Thus, even where the prisoner is seeking relief not provided for under the grievance procedure, exhaustion is still a prerequisite to his filing suit.  Id.; Booth v. Churner, 532 U.S. 731, 733-34, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001).  It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate.  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  The court's

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit.

Defendants contend that Plaintiff failed to exhaust his administrative remedies as to three specific claims: (1) his claim against all Defendants that sack meals served were nutritionally deficient for lack of vegetables; (2) his claim that his meals were unsanitary; and (3) his claim that Defendants Ford, Arthur, Cauley, Joiner, and Washington, instructed staff to deny him meals. (Doc. No. 193, pp. 9-10). Conversely, Plaintiff asserts that he has fully exhausted the administrative remedies which were actually available to him.

Plaintiff's filings focus on several alleged constitutional violations occurring between the dates of November 2003 and July 2005. (Doc. No. 198, p. 1). Plaintiff contends that he was frequently denied meals from November 2003 through May 2005. (Doc. No. 17, pp. 3-9). He asserts that prison officials served him nutritionally deficient sack meals beginning in August 2004 and continuing through May 2005. (Doc. No. 17, pp. 9-10). Plaintiff alleges that unsanitary meals were served from May 2005 until July 2005. (Doc. No. 17, p. 7). Plaintiff's allegations that Defendants Ford, Arthur, Cauley, Joiner, and Washington ordered his meals denied pertain to events occurring between January 2004 and May 2004.

## A.    Defendants Ford, Arthur, Cauley, and Joiner

Defendants submit the affidavit of Shevondah Fields, Manager of the Office of Investigations and Compliance for GDC. Fields asserts that between January 23, 2003, and April 19, 2004, Plaintiff appealed no grievances beyond the institutional level. (Doc. No. 193-10, p. 8). Fields shows that between April 20, 2004, and October 11, 2005,

Plaintiff appealed only one grievance pertaining to the denial of meals. (Id. at 8, Exh. 2). This grievance, # 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, was filed on April 28, 2004, and claimed that GSP staff intentionally denied him meals as a form of disciplinary punishment. (Id.). This grievance appears to have been the only one pertaining to meals that Plaintiff successfully appealed to the highest level. Because the successfully pursued grievance did not contain claims against Defendants Ford, Arthur, Cauley, Joiner, and Washington, and did not pertain to the sanitation or nutritional adequacy of his meals, Defendants contend that these claims are unexhausted.

In response, Plaintiff asserts that he has made every effort to exhaust his claims but that the GDC grievance regulations have rendered his administrative remedies unavailable. Plaintiff asserts, and Defendants admit, that beginning on June 1, 2004, GDC policy was altered to require an additional "informal" step in the grievance process, and limited inmates to one informal grievance per week. See IIB05-0001 (effective June 1, 2004), p. 4 (Doc. No. 193-10, p. 27). After the change in policy, GDC "administratively closed" all of Plaintiff's grievances filed prior to April 15, 2004, and thus these grievances are deemed exhausted. (Doc. No. 209, p. 10). Accordingly, the Court's first inquiry is whether the claims in question were grieved prior to that date.

The undisputed evidence establishes that Plaintiff filed numerous grievances prior to April 15, 2004. The only claims in question that could have conceivably been grieved during the pre-April 15, 2004 time period are Plaintiff's claims that Defendants Arthur, Cauley, Ford, and Joiner, instructed staff to deny him meals, as these incidents allegedly occurred between January and March 2004.[4] Neither party provides copies of

---

[4] Plaintiff claims a constitutional violation by Defendant Sheldon Washington occurring in May 2004, subsequent to the closing of his grievances. However, despite the fact that the exhausted grievance may

any grievance filed by Plaintiff prior to April 15, 2004, nor can the court locate any such filing in the voluminous exhibits provided by the litigants. Plaintiff contends that "[g]rievances against R. Cauley were administratively closed and the same for Sgt. Ford and Bernard Joiner because they were grieved prior to April 15, 2004. Those against Sgt. Arthur, Sheldon Washingon are pending or on hold. . . ." (Doc. No. 198, p. 15). At another point Plaintiff asserts that he grieved his claims against all the Defendants in question, including Arthur and Washington, prior to the April 15, 2004 closing date. (Doc. No. 203, p. 12). Plaintiff identifies several grievances filed prior to April 2004 naming these Defendants: "Preprinted # 546561 (1/27/04) naming Robert Cauley; #414402 (2/4/04) naming R. Cauley and Bernard Joiner; #418170 (3/10/04) . . . ." (Doc. No. 203, p. 11). However, while Plaintiff submitted several copies of grievances filed, they all were filed subsequent to the April 2004 closing date. In subsequent responsive filings, Defendants do not address any of these contentions, nor do they provide any documentation of which grievances were filed, closed, and thus exhausted prior to April 15, 2004.

As the party moving for summary judgment, Defendants have the burden of establishing that Plaintiff cannot prove an essential element of his case. Defendants have failed to meet this burden with respect to their claim that Plaintiff did not exhaust his claims against Defendants Arthur, Cauley, Ford, and Joiner. The facts relating to Plaintiff's execution of the grievance procedure are in dispute, but the Court must nonetheless resolve the exhaustion issue in Plaintiff's favor. Disputed issues of fact in a motion based on the failure to exhaust under the PLRA should be decided by the Court.

---

not have identified Washington or the others by name, the Supreme Court has been clear that this does not necessarily prevent him from being named in a later lawsuit. See Jones v. Bock, 127 S. Ct. 910, 922-23, 166 L. Ed. 2d 798 (2007).

Indeed, Judges can make credibility determinations regarding a prisoner's claim that prison officials denied him a reasonable opportunity to properly comply with grievance requirements. Priester v. Rich, 457 F. Supp. 2d 1369, 1377 (S.D. Ga. 2006). The Court has done as much in this case, and concludes that Plaintiff pursued and exhausted the administrative remedies which were actually available to him as to his claims against these Defendants.

## B.   Nutritionally-Deficient Sack-Meals and Unsanitary Meals

Defendants allege that, during the relevant time period, Plaintiff successfully exhausted only one grievance addressing his meals, and that this grievance did not address his claim that the sack meals served were nutritionally deficient. According to the evidence submitted by Defendants, this sole exhausted grievance, # 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, alleged that GSP staff intentionally withheld his meals as a form of disciplinary punishment, and that such action was authorized by prison supervisors.

In response, Plaintiff contends that while he attempted to exhaust his administrative remedies, GDC regulations rendered his remedies unavailable. Specifically, Plaintiff asserts that because the number of grievances he could have pending at one time was limited, he was unable to fully exhaust all of his claims before the limitations period applicable to the claims was to expire.

The undisputed evidence establishes that GDC policy requires inmates to have no more than two pending non-emergency grievances at any given time at the institutional level. See S.O.P. IIB05-0001 (effective June 1, 2004), p. 4 (Doc. No. 193-10, p. 27). Policy provides that all grievances filed beyond this limit are put on hold until

a previously-submitted grievance is completed at the institutional level.[5]   Id.
Furthermore, inmates are limited to one grievance per week, limited to one issue.  See
S.O.P. IIB05-0001 (effective June 1, 2004), p. 4 (Doc. No. 193-10, p. 27).  Additionally,
the policy requires that an issue must be grieved within ten days of knowledge of the
facts giving rise to the grievance.  See S.O.P. IIB05-0001 (effective June 1, 2004), p. 5
(Doc. No. 193-10, p. 28).  The effect of these policies, according to Plaintiff, was that he
could never have possibly exhausted all of his claims, because the alleged violations
were often occurring on a daily basis.

In response, Defendants contend that there are policies in place to address the
situation in which Plaintiff finds himself.  Indeed, while grievances are typically
addressed in the order in which they are filed, inmates are given the opportunity to
prioritize their grievances by dismissing a pending grievance to allow the resolution of
another grievance.  See S.O.P. IIB05-0001 (effective June 1, 2004), p. 4 (Doc. No. 193-
10, p. 27).  Additionally, inmates are allowed to file grievances "out-of-time," or more
than ten days after the facts giving rise to the complaint if he can demonstrate good
cause.  (Doc. No. 193-10, p. 7).

The PLRA leaves no room for judicial discretion, but instead requires exhaustion
in strict compliance with prison regulations, "irrespective of the forms of relief sought
and offered through administrative avenues."  Johnson v. Meadows, 418 F.3d 1152,
1155 (11th Cir. 2005) (internal punctuation and citations omitted).  In other words, in
order for Plaintiff to have exhausted his administrative remedies on a claim, he must
have done so in the manner provided by the relevant GDC policy, following the proper

---

[5] For example, Plaintiff's solitary exhausted grievance on the meals issue was filed on April 19, 2004, put on hold on April 29, 2004, activated on December 20, 2004, and answered at the institutional level on January 13, 2005.

procedure within the given time lines. Given the undisputed evidence before this Court, it is clear that Plaintiff has not done so with regard to his claims that his sack meals were nutritionally deficient or that he was served unsanitary meals. Plaintiff successfully exhausted only one grievance relating to his meals, but it contained no allegation that his meals were nutritionally deficient or unsanitary, and was in fact filed prior to either of those alleged violations' inception.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim as it pertains to his factual allegations that he was served nutritionally deficient and unsanitary meals. However, the undersigned recommends that these claims be dismissed without prejudice, so that Plaintiff may continue with the administrative grievance procedure in an attempt to exhaust his remedies.[6]

## III.    Merits of Plaintiff's Eighth Amendment Claims

Given the foregoing conclusions, Plaintiff has three Eighth Amendment claims on which Defendants move for summary judgment: (1) that Defendants denied him meals as a form of disciplinary punishment; (2) that Defendants failed to flush his toilet frequently enough to keep his cell sanitary; and (3) that Defendant Dr. Jones specifically failed to provide him with adequate medical care for ailments resulting from these conditions.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to take reasonable measures to

---

[6] The Court is cognizant of Plaintiff's complaint that completion of the administrative review process, given the apparent backlog due to the very large number of grievances he has filed, may be a lengthy process. Plaintiff argues that he has no choice but to seek redress in this Court prior to exhausting his administrative remedies in light of the applicable two-year statute of limitations. However, Plaintiff ". . . will have the opportunity to demonstrate that he is entitled to equitable tolling. See Leal v. Georgia Dep't of Corr., 254 F.3d 1276, 1280 (11th Cir. 2001)." Williams v. Rich, 2006 WL 2534417, *9 (S.D. Ga. 2006).

guarantee the safety of prison inmates. This requirement reaches not only "barbarous physical punishment," but also applies to conditions of confinement that themselves constitute punishment. Rhodes v. Chapman, 452 U.S. 337, 345-346, 101 S. Ct. 2392, 2398-2399, 69 L. Ed. 2d 59 (1981). In this regard, states may violate an inmate's Eighth Amendment rights by failing to provide reasonably adequate food, shelter, and sanitation. Newman v. Alabama, 559 F.2d 283, 286 (5th Cir. 1977). The Supreme Court has established no single test for determining what constitutes cruel and unusual conditions of confinement, but instead has held that "the Eighth Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." Rhodes, 452 U.S. at 346, 101 S. Ct. at 2399 (internal punctuation and citation omitted). Conversely, conditions that are not cruel and unusual under these standards, though they may be "restrictive and even harsh...are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S. Ct. at 2399.

The Eighth Amendment analysis includes both an objective and subjective component. The objective component requires that conduct by public officials be "sufficiently serious to constitute a cruel or unusual deprivation – one denying the minimal civilized measure of life's necessities." Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000) (internal punctuation and citations omitted). The second requirement, the subjective component, requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." Id. at 1257.

### A. Meal Denial

First, Defendants assert that Plaintiff himself created a situation in which GSP officials had to deny him meals. Defendants contend that Plaintiff refused to return his

used food trays, creating sanitation and supply problems. As a result, Defendants allege, they were forced to allow Plaintiff only one meal tray at a time, which of course meant his not receiving a new meal when he refused to return his used tray.

In support of their position, Defendants offer their "Segregation/Isolation Checklists," which purport to log meals served to Plaintiff during the period in question. Plaintiff alleges that he was denied meals from November 2003 through May 2005. (Doc. No. 17, pp. 4-9). Plaintiff identifies approximately ninety-one dates during this time period on which he was denied one or more meals.[7] (Doc. No. 17, pp. 4-10). Defendants contend that their logs establish that during the relevant time period,[8] Plaintiff actually "refused" a large number of meals and was served many of the meals he alleges were denied. Plaintiff's own evidence and logging of events, of course, is to the contrary. The undisputed evidence, however, does indeed establish that Plaintiff did not receive several meals.[9]

Defendants assert that their actions "had a penological justification." (Doc. No. 21, p. 21). Because Plaintiff hoarded his used food trays, Defendants contend, they were forced to require a used food tray in exchange for a meal. (Id. at 22). Defendants' contentions, however, are wholly unavailing. First, Defendants repeatedly refer to certain of Plaintiff's missed meals as "refusals." However, regardless of how these instances were documented in prison logs, what Defendants' actions amounted to was

---

[7] Plaintiff's Statement of Undisputed Material Facts identifies approximately 143 meals he alleges were denied on these dates. (Doc. No. 198, pp. 4-11).

[8] Defendants identify the "relevant time period" as January 2004 through May 2005. The allegations contained in Plaintiff's Amended Complaint (Doc. No. 17) actually pertain to events beginning in November 2003.

[9] Though Plaintiff alleges many more, Defendants admit specifically that Plaintiff did not receive at least 32 meals from three individual Defendants, and many were "not documented." (Doc. No. 21, p. 21).

AO 72A
(Rev. 8/82)

a complete denial of a meal: Plaintiff refused to give them his old tray, so Defendants refused to give him breakfast, lunch, or dinner.

Specifically, several Defendants assert that they never gave orders to deny Plaintiff meals, but instead implemented or were aware of a policy in which Plaintiff would not receive a meal until he returned his used food tray. This distinction is completely devoid of any substantive meaning, and is instead a different way of saying the exact same thing: Plaintiff was denied meals because he did not comply with officials' orders. For example, Defendant Hugh Smith states in his affidavit that "I never verbally ordered anybody to deny him meals nor did I ever place such orders in writing," but goes on to assert his awareness of the food tray problem and resulting policy. (Doc. No. 193-6, pp. 14-15). Defendant Steve Dupree asserts that "Inmate Howard is not being denied meals although he has at times been denied a new food tray until he returned his used food tray." (Doc. No. 193-3, p. 5). Again, the Court fails to recognize any difference between being denied "meals" and being denied "a new food tray." A memorandum issued by Captain Johnny Smith on July 7, 2003 to "all concerned" states that "[e]ffective with the issuance of this memorandum, Inmate Howard will not receive a food tray until he turns in the food tray from the previous meal." (Doc. No. 193-6, p. 18).

The evidence from the officers themselves accused of denying meals are to this same effect. Defendant Robert Cauley states that he was directed not to give Plaintiff a new food tray until he returned his old tray. (Doc. No. 193-6, p. 23). Defendant David Palmer stated that he received similar instructions from the Officer in Charge not to give Plaintiff a food tray until he returned the tray from the previous meal. (Doc. No. 216, pp. 42-43). Similar assertions were made by Wilbert Daniels, Lannis Tillman, Mickey

AO 72A
(Rev. 8/82)

Arthur, Billy Black, Richard Nail, Olan Strickland, Robert Krueck, Donald Underwood, Roosevelt Clark, Steve Durden, Essie Weaver, Sheena McKinnis, Carmen Dillihunt, Miriam Bradley, Reginald Ford, and Shawana Moore.[10]  Defendant Johnny Oliver, who also confirmed the policy in question, clarified that "[i]f Plaintiff did not return his tray he was not served anything during that meal."  (Doc. No. 216, p. 60).

"The Constitution requires that prisoners be furnished reasonably adequate food."  Jones v. Diamond, 636 F.2d 1364, 1378 (5th Cir. 1981).  On the issue of food provision, the Eleventh Circuit has been explicit that "[a] state's failure to provide any food . . . clearly would violate [the Constitution][11] regardless of the state's objective." Hamm v. DeKalb County, 774 F.2d 1567, 1573 (11th Cir. 1985).  Defendants contend that "correction officers are not required to act as personal servants to avoid an Eighth Amendment claim," (Doc. No. 209, p. 4), and that restrictive and harsh conditions are the price inmates pay for their transgressions, (Doc. No. 193, p. 6).  Be that as it may, "[i]t is much too late in the day for states and prison authorities to think that they may withhold from prisoners the basic necessities of life, which include reasonably adequate food, clothing, shelter, sanitation, and necessary medical attention.'"  Newman v. Alabama, 559 F.2d 283, 286 (5th Cir. 1977).

---

[10] Though Plaintiff named "Shawana Monroe," this Defendant appears to actually be named "Shawana Moore," as she refers to herself in pleadings.  See Doc. No. 216, Exh. F-49.  The Clerk is hereby directed to make the appropriate correction to the Court's docket.

[11] In Hamm, the pertinent part of the plaintiff's claim was governed by the substantive due process provision of the Fourteenth Amendment rather than the Eighth Amendment's cruel and unusual punishment provision because he was a pretrial detainee.  However, "decisional law involving prison inmates applies equally to cases involving pretrial detainees."  Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (internal punctuation omitted).  Indeed, in Hamm, the Eleventh Circuit held that "the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons" and that "the two provisions necessarily yield the same result."  774 F.2d at 1574.

While it does not appear that *any* denial of food is a per se Eighth Amendment violation, it can constitute cruel and unusual punishment in certain circumstances. Indeed, Defendants admit that "food is a basic human need and the consistent denial of food would violate the constitution." (Doc. No. 209, p. 4). Based on the evidence before this Court, questions of fact remain as to how often Plaintiff was actually denied food, and whether the evidence ultimately establishes that it is enough to violate Plaintiff's rights cannot now be decided as a matter of law. See generally Wilson v. Seiter, 501 U.S. 294, 304, 111 S. Ct. 2321, 2327, 115 L.Ed.2d 271 (1991) (it would be an Eighth Amendment violation to deny a prisoner an "identifiable human need such as food"); Sanville v. McCaughtry, 266 F.3d 724, 734 (7th Cir.2001) (withholding food from an inmate can, in some circumstances, satisfy the Eighth Amendment's objective prong); Talib v. Gilley, 138 F.3d 211, 214 n.3 (5th Cir.1998) (noting that denial of one out of every nine meals is not a constitutional violation); Cooper v. Sheriff of Lubbock County, 929 F.2d 1078, 1083 (5th Cir.1991) (failure to feed a prisoner for twelve days stated Eighth Amendment claim); Cunningham v. Jones, 567 F.2d 653, 660 (6th Cir. 1977), app. after remand, 667 F.2d 565 (1982) (feeding inmates only once a day for 15 days, would constitute cruel and unusual punishment only if it "deprive[s] the prisoners concerned . . . of sufficient food to maintain normal health."); Robbins v. South, 595 F. Supp. 785, 789 (D. Mont. 1984) (requiring inmate to eat his meals in less than 15 minutes does not amount to cruel and unusual punishment).

Viewing the evidence in a light most favorable to Plaintiff, the Court finds that he has sufficiently alleged a deprivation severe enough to violate the Eighth Amendment. As such, it is the role of the fact finder, not the Court, to weigh the evidence and

determine whether Plaintiff's rights under the Eighth Amendment were violated. Whether the facts Plaintiff will be able to prove regarding the purportedly denied meals and the physical effects he suffered as a result are sufficient to give rise to a constitutional violation, and if so, the measure of plaintiff's damages, are questions for a jury. Accordingly, both parties' motions for summary judgment on Plaintiff's meal denial claim should be **DENIED**.

### B.    Toilet Flushing

As previously summarized by this Court, Plaintiff alleges that "he is being housed in unsanitary and inhumane conditions. Plaintiff alleges that officials at GSP refuse to flush the toilet in his cell, and that as a result he has suffered respiratory and digestive problems. (Doc. No. 17, p. 13). Plaintiff contends that while he was housed in the K-1 dorm at GSP, personnel frequently refused to flush his toilet,[12] often for several days. (Doc. No. 131-3, p. 28). Plaintiff contends that he wrote to superiors about the sanitation of his cell, but was ignored. (Id. at 29).

In moving for summary judgment, Defendants assert that Plaintiff can show no risk of harm from these conditions even if they existed. Defendants further contend that "the United States Constitution does not require [Plaintiff]'s toilet to be flushed every two hours," and that if conditions are unsanitary, they were caused by Plaintiff himself. (Doc. No. 209, p. 9).

According to the undisputed evidence, Plaintiff's cell is equipped with a flush valve, which allows officers outside of the cell to flush his toilet. (Doc. No. 198, p. 12; Doc. No. 192, p. 5). According to Defendants, the valve was installed in response to

---

[12] The toilet in Plaintiff's cell is equipped with a flush valve that can only be controlled by staff from outside the cell. (Doc. No. 192, pp. 5-7).

Plaintiff's repeatedly and purposefully clogging his toilet, creating a sanitation issue. (Doc. No. 192, p. 5). Plaintiff disputes this contention. (Doc. No. 198, pp. 13-14). Regardless, however, the parties disagree primarily over whether the toilet was flushed every two hours, and whether, assuming it was not, that created conditions which violated the Eighth Amendment.

According to the evidence submitted by Plaintiff, taken in the light most favorable to him, he was confined to a cell with a toilet that could only be flushed by prison officials, and that they frequently failed to flush for days at a time. As a result, Plaintiff was forced to live in the same quarters with his own urine and feces and the accompanying stench. As stated by the Second Circuit, "[c]ausing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted." LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cir. 1972).[13] Thus, it is possible, if Plaintiff is able to prove that such severe conditions existed, that he will establish that Defendants were deliberately indifferent to his health and safety. Accordingly, Defendants are not entitled to summary judgment on this claim, as there are disputed issues of fact concerning whether they allowed Plaintiff to exist in close confines with his own waste for days at a time or otherwise subjected him to unconstitutional conditions. Thus, to the extent either party seeks summary judgment on this portion of Plaintiff's claims, all motions should be **DENIED**.

---

[13] In LaReau, the plaintiff's cell contained a "Chinese toilet," which was essentially a hole in the floor of the cell that could only be flushed by a valve controlled by officers outside the cell. 473 F.2d at 976. The Court found the overall conditions were "indecent" and "seriously threatened the physical and mental soundness of its unfortunate occupant." Id. at 978.

## C. Medical Care

This Court previously dismissed Plaintiff's deliberate indifference to serious medical needs claim against GSP staff, as it found no genuine issue of material fact existed. See Doc. No. 137, pp. 9-11; Doc. No. 156, pp. 2-3. That claim involved Plaintiff's allegation that staff had failed to provide him with certain prescribed medications for his acid reflux and skin conditions. Separately, however, Plaintiff alleged that Defendant Jones, the GSP medical director, repeatedly ignored his requests to be treated for illnesses resulting from his conditions of confinement. (Doc. No. 17, p. 12). In this motion for summary judgment, Defendants appear to argue in favor of summary judgment on the claim that was previously dismissed. See Doc. No. 193, pp. 36-40 (asserting that Plaintiff's acid reflux and itching are not sufficiently serious medical needs, and that Dr. Jones was not deliberately indifferent to same). Defendants fail to offer any argument as to Plaintiff's specific pending complaint that Dr. Jones ignored his medical requests. Plaintiff submitted evidence demonstrating that he made such requests on a near-daily basis between July 2004 and April 2005. (Doc. No. 20). For this particular time period, Defendants point to no evidence of any medical visits made by Plaintiff. The Court, however, having sifted through the enormous number of documents simply submitted by Defendants in apparent support of their motion, notes that Dr. Jones' Responses to Plaintiff's Third Request for Discovery by Interrogatories states that Plaintiff was seen at medical by a physicians' assistant on August 9, 2004. (Doc. No. 216-4, Exh. F-44, pp. 33-34). Defendants' brief states that two medical visits were scheduled for October 25, 2004, and November 22, 2004, and point to "Defendant Jones' Responses to Plaintiff's Interrogatories, ¶2." (Doc. No. 193,

AO 72A
(Rev. 8/82)

p. 38). As Defendants are certainly aware, however, there are several submissions to which this could refer, and paragraph two of none of Jones' responses attached to their Supplemental Exhibits appears to contain this information.

Defendants are reminded of the Seventh Circuit's apt pronouncement that "[j]udges are not like pigs, hunting for truffles buried in briefs." United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991). It is not the responsibility of this or any court to manufacture arguments or sift through the hundreds of filings of a case in search of supportive material for a party. This kind of practice, which has occurred intermittently throughout the litigation of summary judgment issues by both parties, not only makes it difficult for the Court to make an informed ruling on the motions, but also violates S.D. Ga. Loc. R. 7.1(b) ("Every factual assertion in a motion, response, or brief shall be supported by a citation to the pertinent page in the existing record or in any affidavit, discovery material, or other evidence filed with the motion."). Litigants, particularly in cases with such a large record, must point to precisely *where* in the record the evidence can be found. A document number from the Court's docket of the case, for example, would be a helpful starting point. Suffice it to say that the Court finds it unnecessary to devote further discussion to this issue. Because there appears to be a genuine issue of material fact on the matter, Plaintiff's claim that Defendant Dr. Jones was deliberately indifferent to his serious medical needs resulting from his conditions of confinement remains pending at this time. Both parties' motions on this point should be **DENIED**.

## IV.    "Causal Connection"

Defendants contend that Plaintiff has failed to offer evidence of a causal connection between their conduct and the alleged constitutional deprivation. Plaintiff,

however, has repeatedly alleged that the named Defendants either personally participated in depriving him of his rights or are liable resulting from action or inaction as supervisors. It does not appear, and Defendants do not seem to allege, that Plaintiff seeks to hold anyone liable based solely upon a theory of respondeat superior.

The primary focus of Defendants' argument appears to be that Plaintiff has failed to provide evidence that he was actually injured as a result of their actions. However, Plaintiff has consistently asserted injuries resulting from Defendants' actions, including weight loss, respiratory problems, and worsening of his chronic digestive illness. Plaintiff has submitted health services requests, letters to medical staff, and grievances complaining of these alleged injuries. (Doc. No. 20). While Defendants contend that Plaintiff's medical records indicate that none of his medical conditions actually worsened, Plaintiff has done enough on this point to create a genuine issue of material fact requiring resolution by a jury. Accordingly, no party is entitled to summary judgment on this issue, and to such an extent the motions should be **DENIED**.

## V. Respondeat Superior

Defendants Hugh Smith, Roberts, Sandra Moore, Brown, Dupree, Louie Smith, Johnny Smith, Sheldon Washington, Arthur, Fleming, Reaves, Kight, and Ford, contend that Plaintiff seeks to hold them liable based solely upon an improper theory of respondeat superior. (Doc. No. 193, p. 40). The doctrine of respondeat superior is not available to render a supervisor liable under §1983 for the unconstitutional conduct of his subordinates. Braddy v. Fla. Dep't of Labor & Employment Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or where there is a causal connection between the

supervisor's conduct and the alleged violations. Id. at 802. A "causal connection" may be established when the supervisor is well aware of a "history of widespread abuse" and fails to correct the alleged violations. Id. Constitutional "deprivations that constitute widespread abuse sufficient to notify the supervis[or] must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." Id.

The record here is replete with Plaintiff's allegations and supportive materials asserting both personal participation and a causal connection between these supervisors' actions and inactions and the alleged constitutional deprivations. Plaintiff has repeatedly alleged that Defendants Hugh Smith, Roberts, Dupree, Brown, Johnny Smith, Ford, Arthur, Sheldon Washington, Louie Smith, Bernard, and Joiner authorized the denial of his meals, or as Defendants prefer to refer to it, the policy under which Plaintiff was denied a new food tray until he returned his previous tray. Furthermore, as previously discussed, several officers and supervisors themselves submitted affidavits admitting to this very policy or a variation thereof.

Plaintiff's claim against Defendant Moore appears to be that, given her position as Assistant Warden in charge of Care and Treatment, she was on notice of a "history of widespread abuse" given the number and frequency of grievances that were filed on this issue. As for Defendants Fleming, Reaves, and Kight, who all appear to be counselors or coordinators working with inmate grievances, the Court cannot identify any way in which Plaintiff could hold these individuals liable for the alleged Eighth Amendment violations. He has alleged no personal participation on their parts, nor has he shown that they are supervisors subject to liability under the "causal connection theory." As such, Defendants Fleming, Reaves, and Kight should be **GRANTED**

summary judgment and dismissed as Defendants. In all other respects, Defendants' motion ought to be **DENIED** on this issue.

## VI.    Qualified Immunity

Defendants assert that they are entitled to qualified immunity on Plaintiff's Eighth Amendment claims. The law governing whether a government official is entitled to qualified immunity is well-established in the Eleventh Circuit. Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities, so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515, 153 L. Ed. 2d 666 (2002)). A government official must first prove that he was acting within his discretionary authority. Id. at 1234. "A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1185 n.17 (11th Cir. 1994). There appears to be no question that Defendants were acting within their discretionary authority in controlling the conditions of Plaintiff's confinement.

Once the government official has shown that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. The Supreme Court has established a two-part test to determine the applicability of qualified immunity. First, the court must determine whether a plaintiff's allegations, taken as true, establish a constitutional violation. Hope,

536 U.S. at 736, 122 S. Ct. at 2513. If, under the plaintiff's allegations, the defendants would have violated a constitutional right, the next step is to ask whether the right was one that was clearly established under the law. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). Further, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202, 121 S. Ct. at 2156. Stated another way, "the salient question ... is whether the state of the law [at the time of the events in question] gave respondents fair warning that their alleged treatment of [the plaintiff] was unconstitutional." Hope, 536 U.S. at 741, 122 S. Ct. at 2516.

As discussed *infra*, the Constitution requires that inmates receive "reasonably adequate food, clothing, shelter, sanitation, and necessary medical attention." Newman v. Alabama, 559 F.2d 283, 286 (5th Cir. 1977). Under Plaintiff's version of the facts, Defendants would have violated this constitutional right. Furthermore, Defendants are not entitled to summary judgment on the basis of qualified immunity, because the "right of a prisoner not to be confined in a cell . . . in conditions lacking basic sanitation was well established" at the time of the incident in question. Chandler v. Baird, 926 F.2d 1057, 1065-66 (11th Cir. 1991). Furthermore, it was clearly established that the Eighth Amendment's duty to safeguard embodies the principle requiring prison officials to provide inmates with humane conditions of confinement, including adequate food. Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994). Finally, at all times relevant to the allegations made by Plaintiff, it was clearly established law that prison officials cannot be deliberately indifferent to the serious

medical needs of inmates. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). Given the foregoing, reasonable officials would have known in 2003-2005 that doing what Plaintiff alleges was done – namely, denying him food, forcing him to eat, sleep, and live in close confines with his waste for long periods of time, and being deliberately indifferent to his resulting serious medical needs – would be unlawful and unconstitutional in light of clearly established law. Defendants therefore are not entitled to summary judgment on the basis of qualified immunity. Accordingly, their motion on this point should be **DENIED**.

## **CONCLUSION**

Based on the foregoing, it is my **RECOMMENDATION** that Plaintiff's Motions for Summary Judgment (Doc. No. 197; Doc. No. 214) be **DENIED**. It is also my **RECOMMENDATION** that Defendants' Motion for Summary Judgment (Doc. No. 191) be **GRANTED** in part and **DENIED** in part. Plaintiff's claim that he was served nutritionally deficient and unsanitary meals should be **DISMISSED** without prejudice as unexhausted. Additionally, Defendants Fleming, Reaves, and Kight should be granted summary judgment and Plaintiff's claims against them should be **DISMISSED**. In all other respects Defendants' Motion for Summary Judgment should be **DENIED**.

SO REPORTED and RECOMMENDED, this 28 day of February, 2008.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE