UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

ERNEST HOWARD, SR.,

    Plaintiff,

v.                        606CV062

WARDEN HUGH SMITH, *et al.*,

    Defendants.

## ORDER

### I. INTRODUCTION

After an independent review of the record, the Court concurs in part with the Report and Recommendation (R&R) of the Magistrate Judge (MJ), to which both parties have filed their Objections. The MJ concluded that there exist genuine issues of material fact regarding three of plaintiff Ernest Howard Sr.'s Eighth Amendment claims: (1) that the defendants denied him meals as a form of disciplinary punishment; (2) that the defendants failed to flush his toilet frequently enough to keep his cell sanitary; and (3) that defendant Dr. Jones[1]

---

[1] Frustratingly, the parties could not be bothered to obtain and state in their filings "Dr. Jones's" full name. Of course, courts cannot enter judgments for and against parties who cannot be fully identified. And inmates understandably often do not know the names of those they sue. But *defense counsel* are in a position to ask their client, "What is your name?" and then write that name in defensive filings. MJs, for that matter, are in a position to *demand* that they do this. Yet, *see* doc. # 75 (waiver of service for "Dr. Jones"); # 76 (Answer filed for "Dr. Jones"), and all subsequent defense filings. Sadly, such litigational sloppiness routinely surfaces in cases before this Court. Within 10 days of the date this Order is served, defense counsel is directed to *correct* the record by supplying Dr. Jones's *full name*. Given the result reached in Part II(E) *infra* (dismissing Jones from this case), that correction can come in the form of an F.R.Civ.P. 59(e) motion to amend judgment. Counsel are also directed to ensure that the full names of *all* defendants are in the record. For example, "Sergeant

specifically failed to provide him with adequate medical care for ailments resulting from these conditions.

The R&R also concluded that certain of plaintiff's claims should be dismissed as unexhausted, and that certain defendants ought to be dismissed based upon an improper respondeat superior theory. In all other aspects, the MJ concluded, the three motions for summary judgment were without merit. The parties have essentially objected to each R&R point; the Court will consider each to the extent necessary.

### II. ANALYSIS

#### A. Statute of Limitations

The defendants argued that all of plaintiff's pre-3/1/03 claims are barred by the applicable two-year statute of limitations because Howard filed his Complaint on 3/1/05. While noting that plaintiff does not actually appear to even offer evidence of claims dating prior to 3/1/03, the MJ rejected defendants' position, finding that plaintiff's allegations are in the nature of "continuing wrongs" and that the limitations period thus does not begin to run until the tortious conduct ceases. Doc. # 219 at 4-5.

The defendants contend that "[t]he 'continuing wrong' analysis has recently been rejected by the United States Supreme Court." Doc. # 224 at 5. They assert that *Wallace v. Kato*, 127 S.Ct. 1091 (2007), abrogated the doctrine and that, in fact, "the entire action should be barred under *Wallace* since Howard knew of the act leading to the 'injury' in 2001." Doc. # 224 at 6.

*Wallace* addressed the issue of when the

---

Ford" is insufficient, unless "Sergeant" is Ford's first name.

limitations period begins to run on a false arrest claim brought pursuant to 42 U.S.C. § 1983. Police detained plaintiff Wallace in 1/94 for questioning concerning a murder investigation. *Wallace*, 127 S.Ct. at 1094. During questioning, he confessed to the murder and was subsequently tried and convicted. *Id.* The state appellate court later reversed the conviction, finding that he had been arrested without probable cause. *Id.* The state dropped all charges against him on 4/10/02. *Id.*

On 4/2/03, Wallace filed a § 1983 complaint against the city and its officers, claiming false arrest in violation of his constitutional rights. *Id.* The district court granted the defendants summary judgment and the Seventh Circuit and the United State Supreme Court affirmed, finding the action time barred because the applicable limitations period began to run from the time of the 1994 arrest, not when the charges were finally dropped in 2002. *Id.*

The Supreme Court analogized Wallace's false arrest claim to one of false imprisonment, defined as a "detention without legal process." *Id.* at 1095. Because the limitations period begins when the alleged false imprisonment ends, and because the false imprisonment ends when the person "becomes held pursuant to the legal process -- when, for example, he is bound over by a magistrate or arraigned on charges," Wallace's period of limitations began to run the day he was arraigned, not the day that his conviction was overturned or the charges were dropped -- or any other subsequent date on which he was eventually released from imprisonment. *Id.* at 1096.

*Wallace* thus is distinguishable from the facts of this case and from the facts of any other claim for damages in the nature of continuing wrongs. For purposes of application of the statute of limitation, a cause of action for a continuing wrong begins to run when the wrongful conduct terminates. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982). This continuing wrong doctrine is applicable to persistent wrongful action, *not* to persistent injury accruing from an earlier wrong. *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980).

That, in turn, is the key distinction between the facts of *Wallace* and the facts of cases such as this. In *Wallace*, the false arrest claim was based upon one wrong action: Wallace's being unlawfully taken into custody without probable cause. Damages for his alleged unlawful detention following his arraignment were recoverable under the entirely distinct action for malicious prosecution. Thus, the false imprisonment alleged by Wallace was not by its very nature a continuing wrong, just a single wrong resulting in a persistent injury.

In contrast, Howard has alleged a continuing pattern of wrongful treatment; specifically, the repeated denial of meals and proper sanitation of his cell in violation of his Eighth Amendment rights. He does not allege a single act of misconduct resulting in continuing future harm, but instead alleges ongoing illegal acts. *See, e.g., Neel v. Rehberg*, 577 F.2d 262, 263-64 (5th Cir. 1978) (refusal to provide medical treatment, shower, telephone, and visiting privileges to prisoner constitutes continuing wrong); *Young v. Donald*, 2007 WL 188006 at * 2 (S.D.Ga. 1/22/07 (unpublished). In that *Wallace* cannot be read to abrogate the "continuing wrong" doctrine, defendants' Objections on this issue are overruled.

**B. Administrative Exhaustion**

As the R&R explained, defendants insisted that Howard failed to exhaust "three specific claims: (1) his claim against all defendants that

2

sack meals served were nutritionally deficient for lack of vegetables; (2) his claim that the meals were unsanitary; and (3) his claim that [d]efendants Ford, Arthur, Cauley, Joiner and Washington instructed staff to deny him meals." Doc. # 219 at 6. Plaintiff, in contrast, has asserted that he fully exhausted these claims. *Id.*

The MJ concluded that the plaintiff failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), as to his claims that he was given nutritionally-deficient and unsanitary meals, so claims (1) and (2) should be dismissed without prejudice. *Id.* at 11. Howard did, however, exhaust claim (3) against Ford, Arthur, Cauley, Joiner and Washington. *Id.* at 8-9.

Plaintiff objects to the claim (1)-(2) recommendation, contending that he submitted into evidence an informal grievance concerning this claim, and that because that grievance was "rejected," he was unable to pursue it further. As the MJ reported, however, exhaustion must be perfected in strict compliance with the prison's regulations. The Georgia Department of Corrections ("GDC") provides for a three-step grievance procedure, requiring the filing of an informal grievance, followed by a formal grievance, followed by an appeal. Thus, under plaintiff's own version of the facts, he has still failed to exhaust as to this claim. As such, Eighth Amendment claims (1)-(2), pertaining to nutritionally deficient and unsanitary meals, are ***DISMISSED*** without prejudice so that Plaintiff may continue to pursue his administrative remedies pursuant to the applicable GDC procedure.

The MJ also concluded that plaintiff exhausted claim (3). Doc. # 219 at 8-9. Defendants object to this finding, asserting that plaintiff's claims against defendants Arthur, Cauley, Ford, and Joiner, should be dismissed as unexhausted. Doc. # 224 at 6-7. The Court agrees with the defendants and ***REJECTS*** the R&R's conclusion that there remains a factual dispute as to whether these claims were exhausted. The defendants showed that Howard failed to appeal this particular grievance and Howard offered no evidence to rebut this. Therefore, claim (3) likewise is ***DISMISSED*** without prejudice.

## C. Merits of Eighth Amendment Claims

Both parties have submitted Objections to the MJ's recommendation that neither party be granted summary judgment on the merits of Howard's remaining Eighth Amendment claims, wherein both largely reassert the contentions of their various summary judgment pleadings.

### 1. Prison Meals

With regard to plaintiff's meal-denial claim, defendants contend that their policy of denying him a new food tray until he returned his old tray is reasonable and not "conscious shocking" enough to amount to an Eighth Amendment violation. The MJ reasoned that the law of this Circuit is clear -- the denial of reasonably adequate food is prohibited by the Constitution. Doc. # 219 at 14-15 (citing, *inter alia*, *Jones v. Diamond*, 636 F.2d 1364, 1378 (5th Cir. 1981)).

The Court does not read *Jones*, a general jail conditions case, nor cases like it, to prevent prison officials from conditioning basic behavioral compliance with the receipt of food. Unless plaintiff is psychotic and not responsible for his actions (no one claims this), it is more than reasonable for prison officials to thwart childish behavior (refusing to hand over old

3

food trays, which obviously causes sanitation and tray-shortage problems) by depriving an inmate of food. Suppose, as defendants point out, a general-population inmate refuses to proceed to chow and stand in line to get his food, but instead insists that it be brought to his cell because he finds it demeaning to have to stand in line. Doc. # 224 at 8-9. Judges, who "are neither correctional officers nor penologists," *Jones*, 636 F.2d at 1368, are not equipped to handle daily acts of sheer recalcitrance. Prison officials are, and thus must be given wide latitude in dealing with *criminals*' behavioral problems.

Viewed within that wide deference, there is simply nothing "conscience-shocking" (the Eighth Amendment litmus test, *see, e.g., Edmonds v. Rees*, 2008 WL 754727 at * 8 (W.D.Ky. 3/19/08) (unpublished)) about a prison policy that deploys self-induced hunger against oppositionally defiant, non-psychotic inmates. This is a prison, not Pizza Hut.

### 2. Toilet-Flushing Claim

The Court has reviewed the R&R and agrees with the MJ that Howard's Eighth Amendment claim pertaining to the sanitation of his cell shall remain pending, as fact questions remain.

### 3. Medical Care

Defendants' Objections to the MJ's report on plaintiff's medical care claim, however, persuade the Court that this claim ought to be dismissed. Throughout the litigation of this case, it has not been consistently clear what is the exact nature of plaintiff's medical care claim or claims. What is certain is that Howard's claim that he was denied certain prescribed medications for his chronic acid reflux and skin conditions has been dismissed by the Court. *See* doc. # 156 at 2-3. The claim that remained pending, while not entirely clear, actually appeared to be a claim that Dr. Jones should have taken some action to prevent GSP officials from creating and maintaining the alleged unconstitutional conditions of confinement. *See* doc. # 17 at 12. To the extent plaintiff claims as much, his action must be dismissed. He has offered no evidence that Dr. Jones held supervisory authority over the GSP personnel in question, or that he personally participated in the alleged creation of the unconstitutional conditions of confinement. Accordingly, defendant Jones is entitled to summary judgment and is hereby ***DISMISSED*** as a party to this action.

### D. The Remaining Objections

The rest of both parties' Objections are without merit. The Court concurs with the MJ that Howard's claims are not barred by 42 U.S.C. § 1997e(e). This statute merely limits the damages he can recover in that he may not recover for mental and emotional injuries not accompanied by a showing of physical injury. Plaintiff has repeatedly alleged and has submitted evidence of physical injuries of more than a *de minimis* nature. As such, defendants' objection here must fail.

Defendants' objection to the MJ's qualified immunity determination likewise fails. Accepting as true plaintiff's allegations, defendants would have violated constitutional rights that were clearly established under the law at the time.

Finally, plaintiff objects to the MJ's recommendation that defendants Fleming, Reaves, and Kight be dismissed due to his claim being based on an improper respondeat superior theory. He argues that these individuals, while admittedly not supervisors of other officers, had a duty to take action to

4

protect his health and safety being duly noticed of the alleged wrongful acts through his grievances.

As the MJ reported, plaintiff has not alleged that these individuals were personally involved in the alleged constitutional deprivations, or that they are otherwise liable as supervisors in any way. Furthermore, plaintiff's allegation that these defendants should themselves be liable for the alleged Eighth Amendment violations sounds at most in negligence. In order to state such a claim for their failure to protect him from other officers' actions, plaintiff must allege facts from which one could conclude that these defendants were subjectively aware of the substantial risk of serious harm and deliberately ignored it. *Farmer v. Brennan*, 511 U.S. 825, 834-38 (1994). "[M]ere[ ] negligent failure to protect an inmate from [a violation] does not justify liability under § 1983." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990). In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Plaintiff's conclusory and general allegations that these individuals should have taken action to protect him beyond accepting and responding to his grievances is simply insufficient. Plaintiff has failed to allege a sufficient subjective awareness of a risk of substantial harm on defendants' part, so his objection to their dismissal as a party to this action is without merit.

### E. 1999 Bar Order

This Court's Order in *Ernest Howard, Sr v. Employees of the Georgia Department of Corrections and State of Georgia*, 699MC052 (S.D.Ga. 8/16/99) (unpublished), basically barred Howard from filing any more cases with this Court until he first paid off his accrued filing-fee debt from the legion of cases he, by that point in time, had filed. *Id.* at 3-5. As explained then,

> Howard has flooded this Court with an endless series of frivolous lawsuits and filings (including one written on toilet paper, see 699MC79). He obviously remains undeterred by the 1996-enacted Prison Litigation Reform Act (PLRA), which amended 28 U.S.C. § 1915 to add the § 1915(g) bar.[2]

*Id.* at 1 (footnote added); *see also* doc. # 15 (follow-up Order directing the Clerk to refer all future Howard lawsuits directly to the undersigned). This became known as a "§ 1915(g)-plus" remedy, as explained *supra* n. 2.

Here Howard evaded that bar by simply

---

[2] As to § 1915(g)'s operation, the Eleventh Circuit explained that

> [a]fter the third meritless suit, the prisoner must pay the full filing fee at the time he initiates suit. The purpose of the PLRA is to curtail abusive prisoner litigation. The only exception to section 1915(g) is if the frequent filer prisoner is under imminent danger of serious physical injury.

*Skillern v. Paul*, 2006 WL 2826609 at * 1 (11th Cir. 10/4/06) (unpublished) (quotes and cite omitted). This Court's 1915(g)-*plus* remedy bars even "imminent danger" filings until the inmate has paid his accrued filing fee debt. This next-level remedy was upheld in *Mathis v. Smith*, 181 Fed.Appx. 808 (11th Cir. 2006), though it is being reviewed in *Miller v. Donald*, No. 06-10536FF (11th Cir. appeal filed 1/9/06) (appeal pending). Additional, "plus-plus" remedies are explained in *Barber v. U.S. Attorney General*, 458 F.Supp.2d 1378, 1379 n. 2 (S.D.Ga. 2006) and *In re Skillern*, 2007 WL 1521588 at * 1 (S.D.Ga. 5/23/07) (unpublished).

adding the Governor of Georgia (Sonny Perdue) and Georgia Department of Corrections Commissioner James E. Donald (residents of, and thus sue-able in, Northern Georgia) as party defendants in this case, then filed it in the Fulton County, Georgia *state* court[3] -- where the U.S. District Court for the Northern District of Georgia is located. Doc. # 1.

Georgia's Attorney General (who represents the defendants) then *removed* Howard's case to the Northern District, doc. # 1, and never once disclosed to that court this Court's bar Orders. Unsurprisingly, the Northern District later transferred it to this Court, doc. # 92, noting along the way that Perdue and Donald were only venue-anchoring defendants. *See* doc. # 103 (that court later dismissed them, over Howard's objections, because Howard stated no viable claims against them). In that sense, they were sham defendants.

Despite *Howard*, doc. # 15 (follow-up Order directing the Clerk to refer *all* future Howard lawsuits directly to the undersigned), the MJ has since plowed through some 200 filings in this case, and the defendants never once sought to invoke the *Howard*, § 1915(g)-plus bar.

Other § 1915(g)-plus barred inmates have sought to evade that bar by adding straw-man or sham defendants and filing in other federal court districts. *See Barber*, 458 F.Supp.2d at 1380-81 (Inmate's repeated filing of frivolous *pro se* actions in district court and in other districts warranted imposition of sanction permitting warden to open and inspect each outgoing envelope from inmate addressed to court and to withhold postage from any document that was not notice of appeal from sanction order, and to block all of inmate's mail to court if he used his own resources to pay postage); *Skillern,* 2007 WL 1521588 at * 1 ("Meanwhile, Skillern has obviously elected to continue his paper-war against the courts by exploiting the 'not other courts' gap in this Court's 7/25/06 Order.... Thus, this Court now creates and applies here its 28 U.S.C. § 1915(g)-plus-plus-plus-plus remedy. As previously noted, a mere 'plus-plus-plus' remedy directs the State to block all of his mail to this Court irrespective of its content. *Barber*, 458 F.Supp.2d at 1381. Under the new remedy, the State is now directed to block all Skillern mail to *any* federal (but not state) court") (emphasis added).[4]

Rather than file in another federal district like Barber and Skillern did, Howard filed his latest case in a state court which, because he included two venue-anchoring (sham) defendants,[5] could be removed to another *federal* court.

The defendants then played right into Howard's hands. They in fact did remove it to a local federal court, doc. # 1, then agreed to the case's transfer to this Court. Doc. # 93. Perhaps because of their assistance (by removing the case to federal court), the defendants did not in any way attempt to exploit the *Howard* bar once they arrived here.

It is tempting to view the bar Order as a waivable defense, but this Court instituted it to protect the *Court itself* (hence, the public) from the paper-blizzard, lawsuit-generation machine that Howard represents. So, it should not be

---

[3] This Court's 699MC052 Order did not bar him from filing in state court.

[4] Skillern unsuccessfully sought to file an amicus curiae brief in *Miller, see* 6/28/07 and 7/11/07 docket entries.

[5] State courts have concurrent jurisdiction over federal constitutional claims. *Barber,* 458 F.Supp.2d at 1378 n. 1; *Minor v. Barwick,* 264 Ga.App. 327 (2003) (addressing deceased inmate's § 1983 claim).

6

waivable merely by failing to raise it.

It also is tempting to beckon the defendants to move to dismiss this case on § 1915(g)-plus grounds. Yet, they materially assisted Howard by removing his case ultimately to this Court. *Their own hand* is in the mix, thus enabling Howard's evasion here.

Howard now knows of the § 1915(g)-protective chain's weak link -- the Attorney General himself, who may just fall for Howard's sham-defendant trick again in the future. This Court therefore forewarns Howard that any more sham-defendant cases will be § 1915(g)-plus barred even if removed to a local federal court and transferred back to this Court.

### III. CONCLUSION

The MJ's R&R is *ADOPTED* in part and *REJECTED* in part. Plaintiff Ernest Howard Sr.'s motions for summary judgment are *DENIED*. Defendants' motion for summary judgment is *GRANTED* in part and *DENIED* in part. Howard's Eighth Amendment claim pertaining to nutritionally deficient and unsanitary meals is *DISMISSED WITHOUT PREJUDICE* so that he may continue to pursue his administrative remedies pursuant to the applicable GDC procedure. His claims against defendants Arthur, Cauley, Ford, and Joiner, are likewise *DISMISSED WITHOUT PREJUDICE* as unexhausted.

Next, "defendant Jones" is entitled to summary judgment and is hereby *DISMISSED* as a party to this action, though defense counsel shall review n. 1 *supra*. Howard's claims against defendants Fleming, Reaves, and Kight are *DISMISSED WITH PREJUDICE*, so these defendants likewise are dismissed from this case. In all other respects, Defendants' motion for summary judgment is *DENIED*. The defendants shall file a Pretrial Order within 30 days of the date this Order is served. In it they shall identify the remaining issues in this case and supply proposed jury charges for them. The Deputy Clerk shall then schedule this case on the next available jury calendar.

Finally, the Clerk shall serve a copy of this Order on all Magistrate Judges in this District.

This __26__ day of March, 2008.

*/s/ B. Avant Edenfield*
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA